**XIU JU WANG, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–3038.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 28, 2009.

Opinion filed: Sept. 29, 2009.

Xiu Ju Wang, New York, NY, pro se.

Richard M. Evans, Esq., Sada Manickam, Esq., Rebecca A. Niburg, Esq., Andrew J. Oliveira, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SCIRICA, Chief Judge, CHAGARES and WEIS, Circuit Judges.

OPINION

PER CURIAM.

Petitioner, Xiu Ju Wang, seeks review of the Board of Immigration Appeals' ("BIA") final order of removal. For the following reasons, we will deny her petition.

### I.

Wang is twenty-two years old and is a citizen of China. Wang entered the United States unlawfully in October 2005 and was placed in removal proceedings. Wang applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") on the ground that she would face persecution in China on account of her opposition to the government's policies toward Falun Gong.

At her removal hearing, Wang testified that, before coming to the United States, she had worked as a proofreader in a printing shop in China. Wang lived in a dormitory at the shop. According to Wang, on April 30, 2005, her boss asked her to proofread a piece of Falun Gong propaganda. Wang testified that she agreed to proofread the article as instructed even though she does not practice Falun Gong.

Wang further testified that, later that night, after she had completed her work and had retired to her room, Chinese authorities raided the shop. Wang explained that she was able to escape through a back door, but left behind all of her belongings, including a personal diary in which she had voiced her opposition to the government's treatment of Falun Gong practitioners. After fleeing the print shop, Wang was afraid to go home, so she went to stay with a relative. Wang later learned that five of her colleagues from the print shop had been arrested and that the shop had been sealed off by the police. Wang testified that, two days after the raid, police appeared at her parents' home with a warrant for her arrest. According to Wang, authorities later returned on several occasions looking for her. In support of her application, Wang submitted several affidavits, including an affidavit from her cousin who also worked at the printing press. Wang claimed that if she were forced to return to China, she would be arrested for the opinions she expressed in her diary.

At the end of the hearing, the IJ asked Wang's attorney to clarify the grounds on which Wang was seeking asylum. Counsel explained that Wang feared persecution on account of her political opinion, that is, her opposition to the government's policies to-

ward Falun Gong. Counsel further explained that the government learned of Wang's political opinion through the diary that they confiscated during the raid. The IJ then pointed out that Wang failed to mention the diary—the very item that put her in danger—in her initial application, and asked Wang to explain why she would omit such a crucial piece of the story. Wang stated that she did not realize that it was important to mention the diary in the application.

Following the hearing, the IJ found that Wang's testimony was not credible, primarily because of her failure to mention the diary in her initial application. The IJ also doubted Wang's theory that the police might have been searching for Wang due to her employment at the printing press alone—regardless of the existence of the diary—because her cousin, who also worked at the press, was never contacted by the police. For these reasons, the IJ concluded that Wang failed to establish a well-founded fear of future persecution and denied her application for asylum. The IJ also denied her applications for withholding of removal and relief under the CAT. The BIA affirmed. Wang now petitions for review of the BIA's order.[1]

II.

The primary issue presented by this appeal is whether the BIA erred in upholding the IJ's adverse credibility determination. When, as in this case, the BIA substantially relies on an IJ's adverse credibility determination, this Court "must look to both decisions in order to satisfy [its] obligation under 8 U.S.C. § 1252(b) to review the administrative decision meaningfully." *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir.2004). An adverse credibility finding is reviewed

---

1. We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a).

for substantial evidence and must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Berishaj v. Ashcroft,* 378 F.3d 314, 322 (3d Cir.2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). Thus, we must afford the IJ's adverse credibility finding "substantial deference so long as the findings are supported by sufficient cogent reasons." *Butt v. Gonzales,* 429 F.3d 430, 434 (3d Cir.2005).

Because Wang filed her application for relief after the enactment of the REAL ID Act of 2005, the IJ's credibility determination is governed by the Act. *See Chukwu v. Att'y Gen.,* 484 F.3d 185, 189 (3d Cir.2007). Under the REAL ID Act, an IJ may base her credibility determination on observations of the applicant's demeanor, the plausibility of the petitioner's story, and on the consistency of the petitioner's statements. *See* INA § 208(b)(1)(B)(iii); *Gabuniya v. Attorney General,* 463 F.3d 316, 322 n. 7 (3d Cir.2006).

As noted above, in this case, the IJ found that Wang's failure to mention the diary in her application significantly undermined the credibility of her story because, in the IJ's view, it was the lynchpin of her claim; without the diary, the police would have no reason to believe that Wang was opposed to the government's Falun Gong policies. Upon review, the BIA determined that there was no clear error in the IJ's adverse credibility finding.[2] Based on our review of the record, we cannot say that a reasonable adjudicator would be compelled to conclude to the contrary. *See Berishaj v. Ashcroft,* 378 F.3d at 322. Wang's failure to mention the diary in her application created a sufficiently significant inconsistency to support the IJ's adverse credibility finding. *See Butt,* 429 F.3d at 434. Although Wang

argues on appeal that "the Immigration Judge should not make an adverse inference on Wang's credibility merely because she supplied additional information during her hearing to supplement information on her I-589," (Petitioner's Brief 17-18), we agree with the BIA and IJ that this omission was rather significant in light of the relative weakness of Wang's case.

Given that the BIA's and IJ's adverse credibility determinations are supported by sufficient, cogent reasons, we will defer to their findings. *See Butt,* 429 F.3d at 434. We therefore agree that Wang failed to establish eligibility for asylum. Furthermore, because Wang's claims for withholding of removal and relief under the CAT are based on the same evidence as her asylum claim, we conclude that substantial evidence supports the denial of these claims as well.

We will deny the petition for review.

---

**2.** Although the BIA stated that the IJ also found that Wang's story was implausible, we read the IJ's opinion as reserving decision on that basis. (Oral Decision, March 29, 2007, 15–16.)